**UNITED STATES, Appellee,**

v.

**Domingo SANTANA–ROSA, A/K/A Felix Sanchez–Suarez, Defendant–Appellant.**

**UNITED STATES, Appellee,**

v.

**Orlando DIAZ–MORLA, A/K/A Joaquin Carpio–Javier, Defendant–Appellant.**

**Nos. 96–1679, 96–1680.**

United States Court of Appeals, First Circuit.

Heard Nov. 3, 1997.

Decided Jan. 6, 1998.

Arthur Joel Berger, Miami, FL, with whom Leonard Baer was on brief, for Appellants.

José A. Quiles–Espinosa, Senior Litigation Counsel, San Juan, PR, with whom Guillermo Gil, United States Attorney, Edwin O. Vázquez, Assistant United States Attorney, and Nelson Pérez–Sosa, Assistant United States Attorney, were on brief for Appellee.

Before TORRUELLA, Chief Judge, LYNCH, Circuit Judge, and DiCLERICO,[*] District Judge.

DiCLERICO, District Judge.

The defendants, Domingo Santana–Rosa and Orlando Díaz–Morla, were convicted of possessing cocaine on a vessel within the customs waters of the United States with intent to distribute it. On appeal they raise issues pertaining to the jury instructions, the opinion testimony of a witness, and the sufficiency of the evidence. Having reviewed the defendants' arguments, we affirm the convictions for the reasons expressed below.

### Factual and Procedural Background

We review the facts in the light most favorable to the verdict. *See United States v. Cardoza*, 129 F.3d 6, 8–9 (1st Cir.1997);

[*] Of the District of New Hampshire, sitting by designation.

*United States v. Wihbey,* 75. F.3d 761, 764 (1st Cir.1996). On July 6, 1995, a police officer with the Fajardo Drugs and Narcotics Division of the Puerto Rico Police Department received two anonymous tips that a shipment of cocaine was going to be delivered in the Fajardo area. The government sent aloft a United States Customs Service aircraft equipped with radar and an infrared night vision system known by the acronym "FLIR," which means "forward looking infrared." The FLIR system allows objects to be monitored in complete darkness based on the heat of the objects.

The aircraft began patrolling the area between Fajardo and the island of Culebra at an altitude of 1500 feet. At 10:15 p.m. Customs Service Agent John Alpers, who operated the aircraft's FLIR, located a marine vessel northwest of Culebra at 1825 degrees latitude and 6526 degrees longitude. The vessel, approximately thirty feet long and with two engines, was moving toward Fajardo at a high rate of speed with its navigational lights out in violation of 19 U.S.C. § 1703. When first located, it was approximately five miles from the nearest land point on United States territory. During subsequent events, Alpers tracked the vessel with FLIR and radar, but at no point did he make direct visual observations of the vessel or its occupants.

The aircraft lost contact with the vessel, but it reacquired it at 10:56 p.m. At that point, the aircraft descended to an altitude of 1000 feet and continued to track the vessel from a distance of one-half to three-quarters of a mile away. At 11:02 p.m., Agent Alpers, with the aid of the FLIR system, observed movements of people on the vessel who "appear[ed] to throw large objects" overboard. At that point, the vessel was again approximately five miles from the nearest land point on United States territory. After the objects were thrown overboard, the vessel departed and headed toward Fajardo at high speed, leaving the objects in the water. At approximately 11:20 p.m., the vessel beached in the Cabeza Chiquita area of Puerto Rico, about nine nautical miles from the place where the objects were thrown from the vessel. Four persons then ran from the vessel into a remote area dense with mangroves. No other boats were in the immediate area of the vessel throughout this time.

The aircraft requested that a National Guard helicopter fly to and mark the area where the objects had been dumped. In addition, it requested the assistance of other officers in apprehending the persons who had run from the vessel. A Puerto Rico police helicopter, a National Guard helicopter, and a police boat arrived to search the area for the persons who had fled the vessel.

One of the helicopters illuminated the area with floodlights to assist the law enforcement officers on the ground in detaining the individuals. Between 12:02 and 12:09 a.m., the police arrested three persons. Two of them are the defendants in this case. Defendant Santana–Rosa was found hiding under water while holding on to mangrove roots. Defendant Díaz–Morla and the third individual were hidden about ten feet from defendant Santana–Rosa. The fourth person observed leaving the vessel was not apprehended. Both defendants gave false names when arrested. Defendant Santana–Rosa asked the arresting officer why so much government force was being used to catch an illegal alien.

Police recovered twenty-seven bales of ninety-one percent pure cocaine weighing 970 kilograms at the site where Alpers witnessed objects being dumped from the vessel. The defendants were charged with a violation of 46 U.S.C. app. § 1903(a), which makes it illegal, *inter alia,* to possess cocaine with intent to distribute it on a vessel within the customs waters of the United States. *See* 46 U.S.C. app. § 1903(a), (c)(1)(D) (West Supp. 1997). The defendants were convicted by jury after a five-day trial.

At trial, the main defense was that there was a lack of direct evidence establishing that the defendants were the individuals observed on the FLIR system leaving the vessel. One of the defendants testified on his own behalf, stating that he was an illegal alien seeking to avoid detection. Alpers testified that the customs waters of the United States extend for twelve miles from any land mass that is part of United States territory and that he observed the vessel within the customs waters of the United States. Alpers

also testified on redirect over the objection of counsel that, based on his experience, in his opinion the individuals who were arrested were the ones he witnessed fleeing the vessel. Following their conviction, the defendants filed a timely appeal.

### Discussion

The defendants allege that three errors in the district court proceedings require our attention. They contend that: (1) the trial court erred in failing to instruct the jury on the meaning of the phrase "within the customs waters of the United States"; (2) the trial court erred in not requiring pretrial disclosure of the testimony of Customs Service Agent Alpers; and (3) the evidence was legally insufficient to establish that they were the persons on the vessel who had dumped cocaine into the ocean. The court discusses these claims *seriatim.*

### A. Jury Instruction on Customs Waters

■ The statute under which the defendants were convicted, 46 U.S.C. app. § 1903, makes it "unlawful for any person ... on board a vessel subject to the jurisdiction of the United States ... to knowingly or intentionally ... possess with intent to ... distribute ... a controlled substance." 46 U.S.C. app. § 1903(a) (West Supp.1997). A vessel is subject to the jurisdiction of the United States, *inter alia,* when it is "located within the customs waters of the United States." *Id.* § 1903(c)(1)(D). The defendants allege that the trial court erred in failing to instruct the jury on the meaning of the phrase "within the customs waters of the United States," a substantive element of the offense for which they were convicted. The defendants contend that, because the term has a technical meaning not within the expertise of the jury, the judge's failure to define it meant that the government was not required to prove this element of its case beyond a reasonable doubt.

■ Because the defendants failed to object to the trial court's instruction, our review is for plain error. *See United States v. Fulmer,* 108 F.3d 1486, 1495 (1st Cir.1997); *United States v. Andújar,* 49 F.3d 16, 22 (1st Cir.1995).[1] The failure to give an instruction may be noticed as plain error when: (1) it is an error; (2) the error is clear or obvious; and (3) the error affected the substantial rights of the defendants. *See Johnson v. United States,* —— U.S. ——, ——, 117 S.Ct. 1544, 1547, 137 L.Ed.2d 718 (1997); *United States v. Olano,* 507 U.S. 725, 732–35, 113 S.Ct. 1770, 1776–78, 123 L.Ed.2d 508; Fed. R.Crim.P. 52(b). When plain error is found, a reviewing court has discretion to correct it only when the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano,* 507 U.S. at 736, 113 S.Ct. at 1779 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)); *see Johnson,* —— U.S. at ——, 117 S.Ct. at 1550. We thus review the context of the charge as a whole to determine if it contains "an error that threatens to 'undermine the fundamental fairness of the trial.'" *Fulmer,* 108 F.3d at 1495 (quoting *United States v. Josleyn,* 99 F.3d 1182, 1197 (1st Cir.1996), *cert. denied sub nom. Billmyer v. United States,* —— U.S. ——, 117 S.Ct. 959, 136 L.Ed.2d 845 (1997)).

The statute under which the defendants were convicted, 46 U.S.C. app. § 1903, is silent as to the definition of the term customs waters. *See* 46 U.S.C. app. § 1903(b)-(c) (West Supp.1997). Other statutes make clear, however, that the customs waters of the United States extend for four leagues, or twelve miles, from United States territory unless another distance has been established

---

1. We reject as without merit the defendants' contention that we should apply a more rigorous standard of review. The defendants have requested that we adopt a rule that where a charge conference is not held in open court or on the record, it will be presumed that a defendant properly objected to any instruction which he or she wishes to pursue on appeal. However, our previous decisions establish that a party waives any objection it might have to a jury instruction by failing to enter that objection into the record immediately after the judge has instructed the jury and before the jury begins deliberations. *See, e.g., Kerr–Selgas v. American Airlines, Inc.,* 69 F.3d 1205, 1212–13 (1st Cir.1995) (civil context); *United States v. Nason,* 9 F.3d 155, 160–61 (1st Cir.1993) (criminal context); *see also* Fed. R.Crim.P. 30. We decline the defendants' invitation to depart from the well-settled rule by adopting the requested presumption.

by treaty. *See* 19 U.S.C.A. § 1401(j) (West 1980).[2] In this case, the judge instructed the jury that one element of the offense was that the vessel be within the "customs waters of the United States" but he failed to provide the jury with a further definition of the term.[3]

Despite the omission of a definition of the element from the jury instructions, the jury was not left completely without guidance on the issue. The government introduced unre-

2. The full text of 19 U.S.C. § 1401(j) provides:

> The term "customs waters" means, in the case of a foreign vessel subject to a treaty or other arrangement between a foreign government and the United States enabling or permitting the authorities of the United States to board, examine, search, seize, or otherwise to enforce upon such vessel upon the high seas the laws of the United States, the waters within such distance of the coast of the United States as the said authorities are or may be so enabled or permitted by such treaty or arrangement and, in the case of every other vessel, the waters within four leagues of the coast of the United States.

19 U.S.C.A. § 1401(j) (West 1980).

3. The relevant portion of the trial judge's instruction is as follows:

> Okay. Let's discuss those statutes that are charged in the indictment. Let's discuss 46 U.S.C. [App.], Section 1903(a). One of the offenses charged in the indictment under 46 United States Code [App.], Section 903(a) [sic], provides in the pertinent part as follows:
>
> It is unlawful for any person on board a vessel subject to the jurisdiction of the United States to knowingly or intentionally possess with intent to distribute a controlled substance.
>
> Section 1903(b) and [(c)(1)](D), vessel of the U.S. defined: Definition of a vessel for the purpose of this section means (D), capital (D), parenthesis: A vessel located within the customs waters of the United States.
>
> . . . .
>
> Let's discuss the essential elements of that offense. In order to establish the offense proscribed by Title 46, U.S.Code, Section 1903, the government must prove each of the following elements beyond a reasonable doubt:
>
> One, that each defendant was on board a motor vessel located within the custom waters of the United States.
>
> . . . .
>
> . . . . The superseding indictment in this case also charges that a vessel is subject to the jurisdiction of the United States. In order to find defendants guilty in this case, you will have to determine, among other things, if the government proved beyond a reasonable doubt that the vessel in question was a vessel within the custom waters of the United States.

butted testimony by Alpers as to both what constituted customs waters and the location of the vessel within customs waters. At trial, Alpers testified that the vessel was first picked up on FLIR within five miles of United States territory. He also testified that the customs waters of the United States extend for twelve miles from the territory of the United States.[4] Alpers' testimony did not, however, mention that the twelve-mile limit can be modified by treaty.

> Section 1903(b) and (D): Vessel of the United States defined means—for the purpose of this sections [sic] means a vessel located within the custom waters of the United States.

Tr. 706–08.

4. Alpers' complete testimony on the issue, made while illustrating his comments with the aid of a navigational chart depicting the area in question that was also entered into evidence, is as follows:

> Q: Now, have you marked the initial sighting in the map?
> A: Yes, sir, I have.
> Q: Would you—using this pointer—
> MR. QUILES: If I may approach the witness?
> Q: (By Mr. Quiles)—show the jury when— where is it that you first sighted the boat.
> A: Okay. It's right here, ladies and gentlemen, right in this area here. That's when we first acquired the vessel, again traveling lights-out, high rate of speed, heading 260 towards this area here, heading this direction approximately here.
> Q: Now, sir, were you able to—are you able to tell the members of the jury at what coordinates was that boat—
> A: Yes, sir.
> Q: —located at once you first locked into it?
> A: Right. Approximate coordinates, 1825 and 6526. Again, that's a latitude and a longitude. Again, that was in this area right here. You can see Culebra, of course mainland Puerto Rico, and it was between both of those, north of this small island chain here.
> Q: As a customs officer was that within the customs waters of the United States?
> A: Yes, sir. That was within the U.S. Customs waters.
> Q: How far out do the customs waters of the United States extend from any land point belonging to the United States?
> A: Twelve miles.
> Q: And there are—are how many land points there in that area that you know of that belong to the United States?
> A: That is all U.S. territory. Culebra, the island chain, of course Puerto Rico. And the vessel, when first acquired, was approximately five miles north of a land mass, thus in U.S. Customs waters.

Tr. Vol I, p. 67–69.

Given this testimony, the defendants have failed to meet their burden to show that the omitted instruction affected their substantial rights. We agree with the defendants that the term "customs waters of the United States" is outside the experience of lay jurors, and that in the usual case the district court must give at least an instruction concerning the ordinary definition of that term, i.e., that the defendants' vessel must have been within four leagues or twelve nautical miles of the nearest land territory of the United States. However, because the evidence was uncontroverted that the defendants' vessel was well within this limit, we cannot see how this omission could have affected their substantial rights, as required under *Olano.*

The defendants did not argue that the twelve-mile limit was inapplicable because their vessel was covered by a treaty that contracted the ordinary limit. In fact, such treaties ordinarily expand the twelve-mile limit. *See, e.g., United States v. Doe,* 860 F.2d 488, 490 (1st Cir.1988). We do not decide under what circumstances a defendant is entitled upon proper request to an instruction concerning the treaty exception to the twelve-mile limit. In this case, however, it is clear that such an omission cannot, at the very least, rise to the level of "plain error." Given the failure of the defense to suggest that the exception was at all relevant, the omission is not "plain error"; certainly it did not "seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings." *Johnson v. United States,* — U.S. —, —, 117 S.Ct. 1544, 1550, 137 L.Ed.2d 718 (1997) (quoting *Olano,* 507 U.S. at 736, 113 S.Ct. at 1779) (internal quotation marks omitted).[5]

## B. Testimony of Customs Service Agent Alpers

The defendants next contend that the trial court erred in not requiring pretrial disclosure of Alpers' opinion testimony that the defendants were the same individuals whom he observed fleeing the vessel.[6] The defendants claim that Alpers' testimony was expert testimony, and thus the government's failure to comply with the expert disclosure requirements constituted a discovery violation. The government contends that Alpers' testimony was not expert testimony, but rather constituted a permissible lay opinion.

The central issue in the trial was whether the three men who were arrested were three of the same four men who fled the vessel when they grounded it. On direct examination, Alpers testified as to the events he witnessed with the aid of the FLIR system. On cross-examination, defense counsel sought to undermine Alpers' assertion that the defendants were the same people whom he had observed on the vessel with the FLIR system. On redirect examination, Alpers testified over the defendants' objection that in his opinion and based on his experience, he had no doubt that they were the same individuals. The defendants contend that because Alpers' opinion was based not upon direct observation but instead upon images on the FLIR this was expert rather than lay testimony. Because the government did not reveal in its expert report that Alpers would give his opinion regarding the identity of the defendants as the men who left the boat, the defendants claim that the government violated discovery rules by introducing the testimony.[7]

5. The defendants have requested that we temporarily refrain from deciding this case to await the Supreme Court's decision in *United States v. Rogers,* 94 F.3d 1519 (11th Cir.1996), *cert. granted in part,* — U.S. —, 117 S.Ct. 1841, 137 L.Ed.2d 1046 (1997) (No. 96–1279). However, in that case the Supreme Court certified only the following question: "Whether a district court's failure to instruct the jury on an element of an offense is harmless error where, at trial, the defendant admitted that element." *Rogers,* — U.S. at —, 117 S.Ct. at 1841. Because, *inter alia,* that case deals with harmless error rather than plain er-

ror, we do not find it necessary or desirable to await the Court's opinion in that case.

6. The defendants concede that, rather than outright reversal, on the record in this case the error would entitle them at most to a remand to the district court to determine whether a discovery violation occurred and if so, what the appropriate sanction should be.

7. Because of the court's ruling that Alpers was not offering an expert opinion, the court need not consider the government's contention that it effectively complied with the disclosure require-

We have rejected similar contentions in the past. In *United States v. Rivera–Santiago,* 107 F.3d 960, 968 (1st Cir.1997), the defendants also claimed that customs agents had improperly testified as experts. We stated:

> In *United States v. Paiva,* 892 F.2d 148 (1st Cir.1989), we noted that the "modern trend favors the admission of opinion testimony [from lay witnesses], provided it is well founded on personal knowledge and susceptible to cross-examination." *Id.* at 157 (permitting drug user to express opinion that substance she found was cocaine). We further explained that "the individual experience and knowledge of a lay witness may establish his or her competence, without qualification as an expert, to express an opinion on a particular subject outside the realm of common knowledge." *Id.; accord United States v. VonWillie,* 59 F.3d 922, 929 (9th Cir.1995) (based on experience, police officer could testify as lay witness that it was common for drug traffickers to use weapons to protect drugs; opinion was helpful to determination of whether defendant was involved in drug trafficking).

*Rivera–Santiago,* 107 F.3d at 968. Here, Alpers unquestionably had experience and knowledge in interpreting FLIR images outside the realm of the jurors' common knowledge. Because he was able to form an opinion based on his direct observation and he was subject to cross-examination, it was permissible for him to offer his opinion as a lay witness. The defendants' attempt to distinguish *Rivera–Santiago* is unavailing. Alpers was not presented as an expert and he did not testify as an expert. Thus it was not error for the trial court to allow him to give his opinion as to the identity of the individuals whom he had observed on the FLIR system.

### C. Sufficiency of the Evidence

■ Finally, the defendants claim that the evidence was legally insufficient to establish that they were the persons on the vessel who had dumped cocaine into the ocean. We review such a contention taking the facts presented at trial in the light most favorable to the verdict. *See United States v. Rogers,* 121 F.3d 12, 15 (1st Cir.1997); *United States v. Montas,* 41 F.3d 775, 778 (1st Cir.1994). Undoubtedly, no single individual was able to observe the defendants unimpeded and unassisted from the time they left the vessel until they were arrested. However, the circumstantial evidence that the defendants were the ones who had fled the vessel was sufficient to allow a reasonable juror to conclude that they had been seen on the vessel dumping the cocaine. Four individuals were witnessed running into the mangroves. Three individuals were arrested among the mangroves. No other individuals were encountered in the area, and there was testimony that the area where the vessel grounded was remote and uninhabited. Alpers testified that, in his opinion, the men who were arrested were the ones who had fled the vessel.

The jury was not required to credit the defendants' theory that they were illegal aliens seeking to evade deportation. The only evidence of this was presented by the defendants themselves, and it was within the scope of the jury's factfinding function to disregard this evidence entirely. Thus, taken in the light most favorable to the verdict, there was ample evidence, both direct and circumstantial, from which a reasonable juror could have concluded that the defendants had been on the vessel, dumped cocaine from the vessel, grounded the vessel, fled to the mangroves, attempted to evade detection until their arrest, and then provided a false explanation of their behavior in light of the likely repercussions of their acts. The defendants have failed to show that they are entitled to relief based on the alleged insufficiency of the evidence offered against them.

### Conclusion

For the reasons stated above, the convictions of the defendants are *affirmed.*

ments by disclosing prior to trial a statement containing the factual basis for Alpers' opinion.