**UNITED STATES of America, Plaintiff**

**v.**

**(1) Leonel VALDES–SANTANA, (2) Roberto Ruiz–Rijo, (3) Juan Jimenez de la Rosa, Defendants**

**No. CRIM. 99–0118(PG).**

United States District Court, D. Puerto Rico.

Feb. 4, 2000.

---

boat traveling toward the island. The boat stopped and the crew jettisoned its cargo, later determined to be bales of cocaine, sixteen of which were subsequently recovered by law enforcement personnel. The boat then turned tail. Leonel Valdés Santana, Roberto Ruiz Rijo and Juan Jiménez de la Rosa were arrested on the boat by United States Customs Service agents on the same day after a chase on the high seas which began near Puerto Rico and ended within sight of the Dominican Republic.

The above version of the initial factual scenario is presented by the United States. The defense notes that the subject vessel was sighted about 32 miles northwest of the coast of Aguadilla by a United States Customs aircraft. The aircraft descended and the vessel went DIW (dead in water), that is motionless. The crew began to throw something overboard, like a big package. This action was videotaped by the aircraft through the use of a forward-looking infrared (FLIR) radar. The vessel then veered toward the Dominican Republic and was chased by two United States Customs go-fast interceptors deployed from Boquerón. The chase to the point of interception took about three hours and occurred near the coast of the Dominican Republic. The coordinates of the floating bales was 19.02 north and 67.16 west. The interception took place at 18.45 north and 67.57west. There is no doubt that these coordinates and the area between them are beyond the jurisdictional sea, that is, the 12–mile limit. *See United States v. Santana–Rosa*, 132 F.3d 860, 863–64 (1st Cir.1998); *United States v. Alvarado*, 982 F.2d 659, 663 (1st Cir.1992).

The three defendants were indicted on April 29, 1999 with being aboard a vessel subject to the jurisdiction of the United States, that is, a vessel without nationality, and aiding and abetting each other in the knowing, intentional, and unlawful possession with intent to distribute and attempt to import into the United States approximately 531 kilograms of cocaine, a Sched-

Warren Vázquez, Assistant U.S. Attorney, Timothy Vasquez, Assistant U.S. Attorney, San Juan, PR, for Plaintiff.

Joseph C. Laws, Federal Public Defender, San Juan, PR, Maria H. Sandoval, San Juan, PR, Lydia Lizarribar–Buxó, San Juan, PR, for Defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

A United States Customs Service aircraft on patrol northwest of Puerto Rico on April 12, 1999 sighted a twenty-foot

ule II Controlled Substance. The indictment also notes that the District of Puerto Rico was the first point of entry where said defendants entered the United States following the commission of the aforesaid offenses.

On October 25, 1999, the defendants moved to dismiss the indictment and in the alternative to suppress evidence derived from the arrest on the high seas by the Customs agents. (Docket No. 40.) They argue that the court does not have subject matter jurisdiction to entertain this criminal matter since the United States Customs agents acted beyond their statutory authority to intervene with, arrest and search the defendants and their vessel. The indictment is thus arguably rendered null and void. They further argue that since the boarding and search of the boat and the arrest of the defendants were conducted at a location fifty miles off the coast of Aguadilla, all evidence seized as the result of the search and arrest, and derived from the same, is subject to suppression.

The United States responded to the motion on November 3, 1999. (Docket No. 41.) The response stresses that the United States Customs Service agents were authorized to pursue and board the subject vessel and arrest the defendants on the high seas and that even if the United States Customs Service agents exceeded their authority by encroaching into the area of responsibility of the United States Coast Guard, such encroachment does not require that the court divest itself of jurisdiction over the subject matter and over the defendants. In any case, the United States argues that not only is dismissal not warranted, but that none of the seized contraband should be suppressed since the same was abandoned by the defendants who thus relinquished standing to suppress such evidence.

Title 19 U.S.C. § 1581(a), grants authority to the United States Customs Service to board and search vessels and arrest their occupants if necessary. The statute reads as follows:

§ 1581. Boarding vessels

(a) Customs officers

Any officer of the customs may at any time go on board of any vessel or vehicle at any place in the United States or within the customs waters or, as he may be authorized, within a customs-enforcement area established under the Anti–Smuggling Act [19 U.S.C.A. 1701 et seq.], or at any other authorized place, without as well as within his district, and examine the manifest and other documents and papers and examine, inspect, and search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board, and to this end may hail and stop such vessel or vehicle, and use all necessary force to compel compliance.

Title 19 U.S.C. § 1581(a) (1999).

Citing *United States v. Warren*, 550 F.2d 219, 224 (5th Cir.1977), *cert. denied*, 434 U.S. 1016, 98 S.Ct. 735, 54 L.Ed.2d 762 (1978), the defense argues that the search, seizure and arrests were illegal because of the lack of authority of the Customs agents to arrest and seize on the high seas. The United States retorts that under 19 U.S.C. § 1587(a), Customs agents have the authority to board hovering vessels as defined in 19 U.S.C. § 1401(k)(1). *See United States v. Cariballo–Tamayo*, 865 F.2d 1179, 1185 n. 11 (11th Cir.1989). A hovering vessel is defined as:

§ 1401. Miscellaneous

. . . . .

(k) Hovering vessel

The term "hovering vessel" means—

(1) any vessel which is found or kept off the coast of the United States within or without the customs waters, if, from the history, conduct, character, or location of of [sic] the vessel, it is reasonable to believe that such vessel is being used or may be used to introduce or promote or facilitate the introduction or attempted introduction

of merchandise into the United States in violation of the laws of the United States.

Title 19 § 1401(k)(1) (1999).

■ Notwithstanding the Warren case cited by the defense, it is clear that United States Customs Service agents have authority to enforce the customs law outside customs waters, based both on statute and convincing jurisprudence, in given circumstances. *See United States v. Cariballo–Tamayo*, 865 F.2d at 1183–84. Erring on the side of caution, rather than expansion, the court finds that one of those circumstances is the detection, monitoring, interception and seizure of a hovering vessel, assuming that the critical statutory caveat is complied with. *United States v. Morales–Cartagena*, 987 F.2d 849, 851 (1st Cir.1993); *United States v. Alvarado*, 982 F.2d at 663; *cf. United States v. González*, 875 F.2d 875, 880–81 (D.C.Cir.1989). The statute designating hovering vessels such as the one involved in this indictment was codified in the title of United States Code dedicated to Customs. Customs agents are precisely the ones empowered to pursue such vessels. A location excluding the high seas is not an element of their authority particularly when they are complying with a clear Congressional mandate nurtured by history as well as precedence. *See, e.g., United States v. Lee*, 274 U.S. 559, 562, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); *Maul v. United States*, 274 U.S. 501, 510–11, 47 S.Ct. 735, 71 L.Ed. 1171 (1927); *United States v. Alvarado*, 982 F.2d at 663. This clear statutory authority requires the court to reject any invitation to look at the purported law enforcement transgression through a constitutional looking-glass. "The jurisdiction of the Customs Service cannot be so narrowly drawn as to frustrate the spirit of these laws, the Congressional intent evident in the legislative history of the statutes, and the goals of the corresponding regulations and interagency agreements." *United States v. González*, 688 F.Supp. 658, 663 (D.D.C.1988). This conclusion does not re-quire the court to search in the crevices of congressional intent or in the footnote of some obscure case. It is clear that the Customs agents in this case were statutorily empowered to do what they did—pursue a hovering vessel, recover suspected contraband, arrest suspects and thus enforce the customs law of the United States.

■ The defendants seek that the court divest itself of jurisdiction since they were brought to this jurisdiction illegally by United States Customs agents, contending primarily that their arrest was illegal. The United States invites the court to entertain the Ker–Frisbie doctrine but the defendants do not so much ask the court to open its eyes at the way the defendants entered the jurisdiction as they ask the court to attribute legal nullity to all acts following an illegal arrest. *See Frisbie v. Collins*, 342 U.S. 519, 522, 72 S.Ct. 509, 96 L.Ed. 541 (1952); *Ker v. Illinois*, 119 U.S. 436, 443–44, 7 S.Ct. 225, 30 L.Ed. 421 (1886). With that focus in mind, Ker–Frisbie and its limited progeny are not considered controlling although the defense argument may appear enmeshed in the doctrine. *See United States v. Cordero*, 668 F.2d 32, 36 (1st Cir.1981); *United States v. Sorren*, 605 F.2d 1211, 1215–16 n. 5 (1st Cir.1979). One must keep in mind, however, that, international law not having been violated, domestic law dictates that the court assume jurisdiction over the charged offense and its defendants. *See United States v. Noriega*, 117 F.3d 1206, 1214 (11th Cir.1997), *cert. denied*, 523 U.S. 1060, 118 S.Ct. 1389, 140 L.Ed.2d 648 (1998); *United States v. Victoria*, 876 F.2d 1009, 1010–11 (1st Cir.1989); *United States v. Marino–García*, 679 F.2d 1373, 1382 (11th Cir.1982), *cert. denied sub nom Pauth–Arzuza v. United States*, 459 U.S. 1114, 103 S.Ct. 748, 74 L.Ed.2d 967 (1983); *cf. United States v. Hensel*, 699 F.2d 18, 28 (1st Cir.), *cert. denied*, 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1317 (1983). Furthermore, insofar as the defendants challenge their being indicted and brought to trial against their will, they cannot claim

immunity from prosecution simply because their appearance in court was precipitated by an unlawful arrest. *United States v. Crews,* 445 U.S. 463, 474, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980). "An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *Id.* (citing *Gerstein v. Pugh,* 420 U.S. 103, 119, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)).

 The defendants jettisoned large bales of cocaine. Whatever standing the defendants feel they may have in seeking to suppress those bales of cocaine is identical to the standing they would have in suppressing any other refuse or jetsam. None. *See, e.g., California v. Greenwood,* 486 U.S. 35, 40–41, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988); *United States v. Infante–Ruiz,* 13 F.3d 498, 501 (1st Cir.1994); *United States v. Scott,* 975 F.2d 927, 928–29 (1st Cir.1992). Furthermore, evidence seized from the vessel itself is clearly not subject to suppression since stateless vessels are international pariah, *see United States v. Caicedo,* 47 F.3d 370, 372 (9th Cir.1995); *United States v. Pinto–Mejía,* 720 F.2d 248, 261 (2nd Cir.1983), *modified,* 728 F.2d 142 (2nd Cir.1984), and the Customs agents, having failed to violate the Fourth Amendment, were implementing their clearly established statutory authority in boarding and searching the suspect vessel. *Cf. United States v. Villamonte–Márquez,* 462 U.S. 579, 592, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983).

The motion to dismiss and/or to suppress evidence is denied.