# United States Court of Appeals
## For the First Circuit

No. 08-1451

UNITED STATES OF AMERICA,

Appellee,

v.

DARRELL D. ALLEN,

Defendant, Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Lipez, Circuit Judges.

Neil S. Tassel, with whom Gary G. Pelletier and Denner Pellegrino, LLP were on brief, for appellant.
Mark T. Quinlivan, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief, for appellee.

July 22, 2009

**LIPEZ, Circuit Judge.** Pursuant to a conditional guilty plea which preserved his right to challenge the district court's suppression rulings, appellant Darrell D. Allen was sentenced to 180 months in prison for being a felon in possession of a firearm. In his sole argument on appeal, citing disputed material facts, he claims that the court erred by failing to hold an evidentiary hearing before denying his motion to suppress certain statements and physical evidence. Unfortunately for appellant, he did not generate the supposedly disputed material facts until he submitted material in support of a motion for reconsideration. We conclude, therefore, that the district court did not abuse its discretion in ruling on appellant's motion to suppress without a hearing and in denying his motion for reconsideration of that order.

**I.**

**A. Procedural Background**

On June 7, 2006, a federal grand jury in the District of Massachusetts returned an indictment charging appellant with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On November 3, 2006, appellant filed a motion to suppress the firearm and ammunition seized by Boston police officers on May 28, 2005, the night of his arrest, as well as certain statements he made to Officer John Coyne that evening. The government filed its opposition to the motion on November 16, 2006. On February 8, 2007, without holding an evidentiary hearing, the

-2-

district court granted in part and denied in part the motion to suppress, prompting appellant to file, on February 27, 2007, a motion for reconsideration, with a supplemental affidavit and exhibits. The district court was unpersuaded and denied the motion for reconsideration on May 10, 2007.

Appellant entered his guilty plea on June 7, 2007. Under the terms of the plea agreement, Allen retained the right, which he now exercises, to appeal the district court's suppression ruling. He was sentenced on March 5, 2008, to 180 months (15 years) in prison, the mandatory minimum sentence for the charged offense, and three years of supervised release.

## B. Factual Background

We begin by describing the record before the district court at the time of defendant's original motion to suppress, noting purportedly disputed facts where relevant.

On May 28, 2005, Lieutenant Luis Cruz, Sergeant Felipe Colon, and Officer Ivan Bermejo, all of the Boston Police Department, were on patrol in an unmarked police cruiser in the Roxbury neighborhood of Boston, Massachusetts. At approximately 1:00 a.m., while driving down Blue Hill Avenue, they saw two men, later identified as appellant and Balgene Samuels, drinking from a clear bottle of beer. The officers turned their car around and returned to the location where they had seen the two men. The officers observed two cars parked nearby on Maywood Street; a

Mercedes Benz CLK 320 Sedan, and a Ford Expedition sports utility vehicle. According to Lieutenant Cruz's affidavit, as the police approached the men, Lieutenant Cruz noticed a half-full bottle of Corona brand beer sticking out of Allen's jacket pocket. The two men identified themselves to the police; appellant stated that the Mercedes belonged to his aunt and Samuels told the officers that the Expedition was his brother's. Sergeant Colon informed the men that because of the high gun activity in the area, they were going to be pat frisked. After the frisk, Sergeant Colon removed the bottle of Corona from appellant's right jacket pocket and a small silver knife from his left pant pocket. Samuels, for his part, admitted that there were several bags of marijuana in his pocket and gave them to Sergeant Colon, along with a knife he removed from his back pocket. According to the police report, when Colon then asked Samuels about the contents of the Ford, Samuels became nervous. Sergeant Colon opened the driver's side door of the Expedition and found a firearm - a loaded Ruger 9mm handgun - on the floor. Both Samuels and Allen were then placed under arrest; Samuels for unlawful possession of a handgun and marijuana, and appellant for drinking in public (which is an arrestable offense under City of Boston Ordinance 16-5.1).

At that point, other law enforcement officers began to arrive to provide assistance, including Officer James Coyne. According to Officer Coyne's affidavit, Sergeant Colon advised him

-4-

that they had already found a gun in the Expedition, and "handed [appellant] off" to Coyne. In his affidavit, Officer Coyne explained that at this point he assumed, based on his training and experience, that Sergeant Colon wanted to separate the two suspects while he continued to investigate the gun. Officer Coyne did not realize that appellant had already been placed under arrest but had not been given his <u>Miranda</u> warnings.

Officer Coyne walked appellant over to his police cruiser and pat-frisked him again, finding a single Mercedes Benz key (which Allen said belonged to his aunt) and some cash in his front pockets, both of which he returned to Allen. After placing Allen in the rear of the cruiser, Officer Coyne asked him whether there was anything illegal in the Mercedes, stating that if there were, Allen's aunt would be charged with it. Appellant replied "whatever you find, charge me with it." According to his affidavit, Officer Coyne then asked appellant for the key to the Mercedes, but appellant denied having it. Officer Coyne instructed appellant to get out of the cruiser. He then discovered that the key was no longer in the pocket where he had found it just moments before. After unsuccessfully searching the rear compartment of the cruiser and the area outside the vehicle for the key, Officer Coyne told Allen that, if need be, he would break the window to get into the Mercedes. Appellant sat down on the sidewalk and retrieved the key from his sock.

Once Allen was returned to the rear of the cruiser, Officer Coyne walked up to the Mercedes. In his affidavit, Officer Coyne averred that, once he had reached the Mercedes, he began to look inside, shining his flashlight to illuminate the vehicle's interior. Officer Coyne explained that he began his inspection by looking through the rear window and then proceeded to the windows on the driver's side as he walked around the side of the car along the curb. According to his sworn testimony, when Officer Coyne reached the corner of the front windshield, he leaned over the fender and the hood of the vehicle, with both feet planted on the ground, and shone his flashlight into the driver's side area. He specifically denied having to walk or sit on the hood to look inside of the car, although he admitted that he may have made some incidental contact with the fender and the windshield as he moved around the vehicle.

As we discuss further _infra_, in the memorandum of law accompanying his motion to suppress, Allen presented a different account of this incident. Allen claimed that, "according to the reports provided in discovery, Officer Coyne then began to attempt to examine the interior of the locked Mercedes. Unable to see anything incriminating in the interior . . ., he positioned himself on top of the hood of the Mercedes, and shined his flashlight into the vehicle's interior." The memorandum contained no record citations for this version of events, and Allen's affidavit did not

-6-

mention Officer Coyne's physical location when he saw the weapon.

Officer Coyne's affidavit recounted how, once he shone his flashlight into the vehicle from the vantage point he had described (i.e., leaning over the fender and the hood), he was able to see the top of a chrome-colored gun. He immediately notified Sergeant Colon, who walked over to the vehicle, took the key from Coyne, and opened up the driver's side door to confirm that the object was indeed a gun. Officer Coyne approached appellant and demanded his license to carry a firearm, which appellant stated he did not have. According to the officer's affidavit, Coyne then removed Allen from the cruiser, placed him in handcuffs, informed him of his <u>Miranda</u> rights, and took him to the police station for booking.

Officer Coyne's affidavit further states that, after they arrived at the station, and appellant had been informed of his <u>Miranda</u> rights for a second time, appellant stated that the "peashooter" was his and that the police "should just slap me off the head with the gun and send me home." Appellant also said that there were "no bullets in the tube but in the clip" and that the gun had a serial number. According to Officer Coyne, this conversation lasted no more than 5-10 minutes. However, in the affidavit Allen submitted in support of his motion to suppress, Allen presented an alternative version of events. He stated generally that he had been "questioned under duress and coercion,"

and claimed that the statements he had allegedly made "were the result of questioning after being placed under arrest but prior to being informed of my <u>Miranda</u> rights."

After Allen and Samuels had been arrested, Lieutenant Cruz, who remained at the scene, decided to impound the cars and conduct an inventory search of the vehicles.

## C. The Motion to Suppress

In the memorandum of law supporting his motion to suppress, Allen argued (1) that Officer Coyne's search of his person and seizure of the key violated the Fourth Amendment; (2) that the search of the Mercedes was illegal and was not justified by any exception to the warrant requirement; and (3) that his questioning by Officer Coyne, both before and after he was given the <u>Miranda</u> warnings, violated his Fifth Amendment rights. He also requested an evidentiary hearing.

In support of his motion, appellant attached an unsigned affidavit which stated, in its entirety, as follows:

1. My name is Darrell Allen.

2. I am the defendant in the above captioned matter.

3. On the morning of May 28, 2005, I was with Balgene Samuels on Maywood Street in Roxbury.

4. Three police officers arrived and searched me.

5. Items were taken from me, I was handcuffed and placed under arrest for

-8-

drinking in public, and placed in a police car.

6. A Mercedes nearby was opened with a key alleged to have been taken from me and searched.

7. I was never seen in the Mercedes and I did not consent or grant permission to the search of the Mercedes.

8. It is alleged that I made certain statements, which if made, were the result of questioning after being placed under arrest but prior to being informed of my Miranda rights.

9. I made no knowing, intelligent, or voluntary waiver of my rights.

10. I was questioned under duress and coercion.

The government filed its opposition on November 21, 2006. It was not until December 12, 2006, nearly three weeks after the government had filed its opposition, that Allen filed another affidavit in support of his motion to suppress that was identical in all respects to the first one, except that he had signed the second one.

The government's opposition to the suppression motion was supported by excerpts of grand jury testimony by Sergeant Colon in Suffolk County Superior Court and the sworn affidavits of Lieutenant Cruz and Officer Coyne, each of which had a number of accompanying exhibits. These included the Boston Police Department Motor Vehicle Inventory Search Policy and the Vehicle Inventory reports on the two cars, a map generated by the Boston Regional

Intelligence Center regarding the incidence of larcenies of motor vehicles in the neighborhood of the arrest, the Boston Police Incident Report on the arrests, photographs of the vehicles at the scene, and appellant's Boston Police Department Prisoner Booking Form containing a signed acknowledgment that he had been informed of his <u>Miranda</u> rights.

The government argued (1) that Officer Coyne's search of the defendant and seizure of the key to the Mercedes was justified as a search incident to a lawful arrest; (2) that the seizure of the firearm was proper both because its discovery would have been inevitable after the Mercedes had been (properly) impounded, towed, and subject to an inventory search, and also because the weapon was in plain view; and (3) that with the exception of one statement that he had made to Officer Coyne before he was administered the <u>Miranda</u> warnings, all of appellant's statements were voluntary and therefore admissible. Finally, the government argued that Allen had not met his burden to obtain an evidentiary hearing because he had failed to adequately contest the government's claims. It maintained that Allen's one-page affidavit was insufficient to establish the existence of any disputed facts that would warrant an evidentiary hearing, even though Allen had an opportunity to generate those disputes. The government's version of the events (as contained in Colon's grand jury testimony, the Boston Police Department Incident report, and the Supplemental Report prepared by

-10-

Officer Coyne) had been disclosed to Allen at the outset of the case.

The district court ruled for the government. In reaching its conclusion, the district court considered as evidence "only the statements made in the affidavits" submitted. On this basis, the court found that an evidentiary hearing was not required because Allen had "not made a threshold showing that material facts [were] in dispute." The court then denied the motion to suppress the firearm and ammunition on the ground that the items "inevitably would have been discovered [in] an inventory search pursuant to the impoundment of the Mercedes following the defendant's arrest." Citing the affidavit of Luis Cruz and the Boston Police Department Inventory Search Policy, both of which were attached to the government's opposition, the court explained that the impoundment of the Mercedes would have been proper in order to protect it from vandalism or theft, given the "hour of the day and the undisputed description of the area of defendant's arrest as one 'plagued by [] firearm-related violence' and one 'in which car theft and car vandalism frequently occur.'" Additionally, the court held that the seizure of the firearm was independently justified by the fact that Officer Coyne had discovered it in plain view. Finally, the court ruled that, with the exception of Allen's statement that "[w]hatever you find, charge me with it," which the government conceded was made prior to Officer Coyne's recitation of the

<u>Miranda</u> warnings, all of appellant's other statements were voluntary and thus admissible.

## D. The Motion for Reconsideration

Three weeks after the district court's ruling, Allen filed a request for reconsideration, supplementing his original motion with "additional information" which, he asserted, was "not previously available at the time it was filed." Specifically, appellant submitted the affidavit of Balgene Samuels, which contained certain factual assertions regarding the neighborhood in which the men had been arrested and the events of May 28, 2005. In his motion for reconsideration, appellant claimed that Samuels's testimony was not previously available because state charges against Samuels, which had raised legitimate Fifth Amendment concerns for him, had been pending until November 8, 2006, and because Samuels had been unreachable until his phone service was "reconnected" on February 13, 2007.

In his affidavit, Samuels stated, inter alia, that his family had owned a home at 33 Maywood Street since 1951; that none of the family's cars, which had always been parked lawfully on the street nearby, had ever been broken into, stolen, or vandalized while parked there; and that at no time had his family's home been broken into or vandalized, nor had he heard of any similar occurrences in the neighborhood. Samuels further asserted that neither he nor Allen had a beer bottle in their possession on May

28, 2005, although Sergeant Colon did pick one up from the sidewalk near where they were standing.  He claimed that Sergeant Colon told both men that they would not be arrested for the marijuana or the drinking because the police were only "looking for guns."  Samuels also stated that Allen told him that before being taken from the scene, he had observed a police officer climb onto the hood of the Mercedes.

Appellant argued that the "newly available" Samuels affidavit called into question a number of the government's factual allegations, including its assertion, adopted by the court, that the neighborhood where appellant was arrested was "plagued" by firearm violence and that if left unattended, the Mercedes would have been at risk of vandalism and theft.  Allen noted that the Samuels affidavit contradicted the government's claim that Allen was drinking a beer or had a beer in his pocket when the police approached.  He emphasized that the new evidence presented serious questions regarding the sequence of events leading up to the seizure of the firearm, including Officer Coyne's location as he looked into the Mercedes and noticed the weapon.  Finally, appellant pointed out that the government's own discovery materials demonstrated that even at the time of his original motion, there had been a genuine factual dispute in the record: ATF Agent Thomas Crowley, in his grand jury testimony, had stated that Officer Coyne

had actually gotten onto the hood of the car in order to look into the vehicle.[1]

In opposing the motion for reconsideration, the government argued that Allen had failed to show that Samuels was unavailable while the original motion was pending or that the information in his affidavit was "newly discovered," particularly given that Allen himself had been present at the underlying events

---

[1] The grand jury minutes contained the following exchange:

> Q: And he actually had to get up, he got up on the hood with a flashlight and shined it in?
>
> A: Yes.

Later, in response to a juror's question, the following colloquy occurred:

> A: He was on the driver's side kind of like where the door and the windshield come together looking down that way. I believe.
>
> Q: Let me ask you, Special Agent Crowley, at some point, and if you need to refer to the Form 26 about this, did Mr. Coyne - - did Officer Coyne actually sit up on the, on the hood of the car and look in?
>
> A: Yes.
>
> Q: On the inside, so he could see inside the passenger compartment?
>
> A: Yes. He actually looked through the front windshield, I'm sorry, not the side door.
>
> Q: Okay.
>
> A: From the windshield right in.

-14-

but had chosen not to include any substantive information in his own affidavit.

In a careful written opinion that was significantly longer than its original decision denying the motion to suppress, the district court denied the motion for reconsideration. The court noted that appellant had been put on notice as to the government's version of the events in question as early as November 17, 2006, when the government filed its original opposition to the motion to suppress.[2] Nevertheless, in the affidavit Allen signed and executed twenty-one days later, he chose not to address any of the government's central factual assertions or to present any additional evidence that would have controverted its story. Specifically, appellant's affidavit disputed neither Officer Coyne's assertion that he had discovered the firearm in plain view in the Mercedes by simply peering into it from the sidewalk, nor the government's claim that the Mercedes was subject to an inventory search pursuant to a lawful impoundment by the investigating officers.

Turning to the Samuels affidavit, the district court observed that all of the proffered evidence regarding the Grove Hill neighborhood of Roxbury had been available to appellant when

---

[2] On the same day, the government filed a motion for leave to file a memorandum in excess of twenty pages. After the district court denied this motion on November 21, 2006, the government immediately filed its amended opposition on the same day.

-15-

he filed his initial motion to suppress, or at least by the time he filed his own sworn affidavit on December 12, 2006. Indeed, on the critical issue of "whether the firearm . . . was discovered in plain view without Coyne's having to climb onto the hood of the Mercedes," the district court emphasized that the Samuels affidavit did "nothing more than recite an out-of-court-statement made by the defendant himself." The court found it curious that Allen did not include this crucial fact in his own affidavit, and that he had since failed to file a supplemental affidavit with this information. Nor did the court credit appellant's assertion that Samuels had been unavailable because of Fifth Amendment concerns, noting that Samuels's state court proceedings had concluded with his guilty plea on November 8, 2006, and he was therefore available at the time that Allen had filed his sworn affidavit. Moreover, the court discounted Allen's insistence that the fact that Samuels' phone had only been reconnected on February 13, 2007, had prevented Allen from reaching him; the court inferred that, since Samuels' own affidavit stated that he had lived at his family's Maywood Street residence since 2001, Allen would have known how to find him.

Finally, the district court noted that, in his original motion to suppress, appellant had not cited Special Agent Crowley's grand jury testimony, and that the court was not required to "rummage through [its] files looking for the evidence now

advanced."[3]  Finally, the court indicated that its decision on the motion to suppress would not necessarily have been affected by the Crowley testimony even if it had been aware of it, since Crowley was not a percipient witness to the relevant events.

**II.**

## A. The Motion to Suppress

"The test for granting an evidentiary hearing in a criminal case [is] substantive: did the defendant make a sufficient threshold showing that material facts were in doubt or dispute?" United States v. Vilches-Navarrete, 523 F.3d 1, 15 (1st Cir. 2008) (quotation marks and citation omitted) (concluding that district court did not abuse its discretion by failing to hold evidentiary hearing on a motion to suppress).  "The district court has considerable discretion in determining the need for, and the utility of, evidentiary hearings, and we will reverse the court's denial of an evidentiary hearing in respect to a motion in a criminal case only for manifest abuse of that discretion." United States v. Staula, 80 F.3d 596, 603 (1st Cir. 1996) (upholding

---

[3] It is unclear whether the court did indeed have this material "in its files" before it received appellant's motion for reconsideration.  Allen obtained the grand jury testimony as part of the government's production of documents in the case, but did not specifically identify that testimony as the source of his unsupported claim that Officer Coyne climbed on top of the Mercedes until he filed his Motion to Reconsider.  At that point, he also submitted the grand jury testimony to the court as an exhibit to his motion.

district court's decision to forego evidentiary hearing on motion to suppress).

To obtain an evidentiary hearing on a motion to suppress physical evidence, a defendant must make a sufficient showing that the seized evidence "was the product of a warrantless search that does not fall within any exception to the warrant requirement. The burden is on the defendant to allege facts, sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented." United States v. Calderon, 77 F.3d 6, 9 (1st Cir. 1996) (internal quotation marks and citation omitted).

Appellant now argues that the district court committed reversible error by making numerous factual determinations adverse to appellant in spite of what he characterizes as a "contradictory" record. Under these circumstances, he contends that the district court abused its discretion by failing to conduct an evidentiary hearing to allow him to present evidence, contest the government's version of events, and subject its witnesses to cross-examination. We disagree.

1. The Firearm and Ammunition

We focus on the plain view exception to the warrant requirement, an alternative ground for the court's denial of the motion to suppress. Under that exception, a warrantless seizure is nevertheless lawful if "(1) the seizing police officer lawfully

-18-

reached the position from which he could see the item in plain view; (2) the seizure satisfied the probable cause standard; and (3) the seizing officer had a 'lawful right of access to the object itself.'" United States v. Antrim, 389 F.3d 276, 283 (1st Cir. 2004). Thus, in order to demonstrate the existence of a substantial constitutional claim, appellant was required to proffer specific facts plausibly suggesting that the search of the Mercedes did not satisfy at least one of the prongs of the plain view exception. As the government points out, Allen does not challenge the third prong (i.e., whether the officer had a lawful right of access to the object itself).[4] Accordingly, we inquire whether it was an abuse of discretion for the district court to find that appellant had failed to raise a genuine issue of material fact regarding either whether Officer Coyne "lawfully reached the position" from which he saw the gun in plain view or the existence of probable cause.

As we have noted, in ruling on appellant's original motion to suppress, the district court "considered as evidence only the statements made in the affidavits submitted by the parties." In the affidavit attached to his motion, Allen did not dispute the Government's version of events related to the search of the

---

[4] This element asks not whether the officer was lawfully in a position to see the contraband (the first element of the plain view analysis), but whether he could lawfully seize it without committing a trespass. See United States v. Jones, 187 F.3d 210, 221 n.10 (1st Cir. 1999).

-19-

vehicle. The affidavit does not contradict the officer's direct statement that he was able to see the gun in the driver's side door of the Mercedes by simply leaning over the hood and shining his flashlight into the window. See Staula, 80 F.3d at 604 (noting that an evidentiary hearing was not required where appellant's affidavit contained no facts that contradicted a police officer's direct statements). Indeed, the affidavit's only references to the search of the Mercedes are appellant's assertions that "[a] Mercedes nearby was opened with a key alleged to have been taken from me and searched" and "I was never seen with the Mercedes and I did not consent or grant permission to the search of the Mercedes." These vague statements, neither of which even mentions the manner in which Officer Coyne searched the vehicle, were insufficient to call into question the government's account.

That is also true of the unsupported factual assertions in appellant's memorandum of law that Officer Coyne "positioned himself on top of the hood of the Mercedes," and that he "climbed onto the hood of the Mercedes," from which point he made his observations about the vehicle's content. Appellant's memorandum did not contain any record citations that would have confirmed these allegations, and it was not an abuse of discretion for the district court to consider only the verified evidence before it. In Calderon, we similarly found no reason to disturb the district court's denial of an evidentiary hearing on a motion to suppress

where the defendant "vaguely claim[ed]" that a consent to search was "coerced or was otherwise ineffective," but "offer[ed] no affidavit or statement . . . to that effect, describe[d] no circumstances supporting his assertion, and ma[de] no offer of proof relative to any other facts that might support his assertion." 77 F.3d at 9.

It is true that, before describing Officer Coyne's actions while he was ostensibly positioned on the hood of the Mercedes, the memorandum stated that "[o]utside the view of the defendant, according to the reports provided in discovery, Officer Coyne then began to attempt to examine the interior of the locked Mercedes" (emphasis added). This vague allusion to "reports provided in discovery," is insufficient to generate a material factual dispute about whether Officer Coyne "lawfully reached the position from which he could see the item in plain view," Antrim, 389 F.3d at 283. Appellant did not attach the relevant Grand Jury testimony to his motion. Nor did he describe its contents in his affidavit, or even specifically identify it as the source of the allegations in his motion to suppress. Because appellant failed to substantiate the vague assertion that Coyne had climbed upon the vehicle, he failed to raise a genuine disputed fact with respect to this prong of the plain view analysis.

Nor did appellant's filings in the district court call into question whether there was probable cause to seize the gun,

see Antrim, 389 F.3d at 283. In his affidavit, Officer Coyne stated unequivocally that when he shined the flashlight into the Mercedes, he observed the top of a chrome gun and immediately informed the other officers of his discovery of a firearm. Appellant's affidavit proffers no specific facts to contradict this assertion. In the face of Officer Coyne's observation of specific contraband, appellant does not raise a serious question regarding probable cause, and the district court's refusal to hold an evidentiary hearing was not an abuse of discretion.

2.    The Statements

Appellant's affidavit contained three assertions pertaining to his questioning by the Boston Police Department:

> It is alleged that I made certain statements, which if made, were the result of questioning after being placed under arrest but prior to being informed of my Miranda rights[;]
>     I made no knowing, intelligent, or voluntary waiver of my rights [and;]
>     I was questioned under duress and coercion.

Setting aside the one statement properly suppressed by the district court, which the Government concedes appellant made before he received the Miranda warnings, these conclusory assertions must be evaluated in light of the government's response.

In his affidavit, Officer Coyne averred that after he had discovered the handgun and confirmed that Allen did not have a license to carry a firearm, he handcuffed Allen, read him his Miranda rights, and took him to the police station for booking. At

the station, Officer Coyne administered the Miranda warnings a second time, and had a conversation with appellant lasting approximately five to ten minutes. According to his affidavit, during this time, Officer Coyne acted professionally and never yelled or threatened appellant. Furthermore, the record before the district court included a booking form containing a Miranda warning acknowledgment that had been signed by the defendant.

In the face of the Coyne affidavit and the signed Miranda acknowledgment, and faced only with appellant's vague assertion that "certain statements . . . if made, were the result of questioning after being placed under the arrest but prior to being informed of [his] Miranda rights," unsupported by any references to specific statements he sought to suppress, it was not an abuse of discretion for the district court to find, without an evidentiary hearing, that the statements were voluntary.

## B. The Motion for Reconsideration

We review the denial of a motion for reconsideration for abuse of discretion.[5] United States v. Fanfan, 558 F.3d 105, 106

_____

[5] The government argues that appellant has waived this issue by failing in his brief to separately enumerate the denial of the motion for reconsideration as one of the issues presented in this appeal or to independently challenge this decision in the argument section of his brief. See Fed. R. App. P. 28(a)(5), (a)(9); Ramos v. Roche Prods., Inc., 936 F.2d 43, 51 (1st Cir. 1991). Instead, appellant raises a general challenge to the district court's failure to hold an evidentiary hearing in light of the evidence before it - including the evidence he submitted in connection with his motion for reconsideration. We do not address the government's waiver argument because we conclude that the district court did not

(1st Cir. 2009). Motions for reconsideration are not to be used as "a vehicle for a party to undo its own procedural failures [or] allow a party to advance arguments that could and should have been presented to the district court prior to judgment." Iverson v. City of Boston, 452 F.3d 94, 104 (1st Cir. 2006) (internal quotation marks and citation omitted). Instead, motions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust. Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005). A court will deny a motion for reconsideration based on the "new evidence" exception if that evidence "in the exercise of due diligence[] could have been presented earlier." Emmanuel v. Int'l Bhd. of Teamsters, Local Union No. 25, 426 F.3d 416, 422 (1st Cir. 2005) (internal quotation marks and citation omitted). Although we review for abuse of discretion the district court's determination that Allen had not made this required showing, we would find no error in the district court's decision even if our review were de novo.

Appellant's motion for reconsideration was based on two propositions: first, that the "new evidence" he proffered - the

abuse its discretion in denying the motion.

-24-

Samuels affidavit - required the court to hold an evidentiary hearing on the merits of appellant's motion to suppress, and second, that the court had erred by overlooking evidence in its own records and ruling on the original motion without an evidentiary hearing.  The district court was correct to reject both these claims.

Allen had filed his original motion to suppress, along with the unsigned affidavit, on November 3, 2006.  The government filed its original opposition on November 16, and an amended opposition on November 21.  At least by this date, then, Allen was on notice about the government's version of events.  Nevertheless, on December 16, the defendant filed a signed affidavit which, despite his access to the government's opposition papers, was identical to the original ten-paragraph affidavit, and none of which directly responded to the government's plain view assertions or specified the alleged <u>Miranda</u> violations.  The court ruled on the motion on February 8, 2007.

All of the evidence in the Samuels affidavit was available to appellant at the time the original motion was filed, and Allen himself could have provided that information in his original affidavit; indeed, on the key plain view inquiry, the Samuels affidavit says only that it was <u>Allen</u> who told him that he had seen Officer Coyne climb onto the car.  Appellant provided no explanation for why this information was missing from his own

affidavit, and no satisfactory justification for the submission of the Samuels affidavit in late February. Samuels's state court proceedings were resolved by November 8, 2006, and the district court was not obligated to accept Allen's argument that Samuels was "unavailable" due to a lack of phone service. Indeed, the district court reasonably inferred that Allen knew where Samuels lived and could get in touch with him if he had wanted to.

Nor did the court abuse its discretion in concluding that the mere reference in appellant's memorandum in support of his motion to suppress to Officer Coyne having climbed on the hood of the Mercedes was insufficient cause for an evidentiary hearing. As we have discussed, the reference was unsupported by any source. Although appellant cited to ATF Agent Crowley's grand jury testimony in his motion for reconsideration to argue that record evidence supported his version of events, this proffer was too little, too late. Indeed, as the court noted, Agent Crowley was not even "a percipient witness to the events in question,"[6] and therefore the court explicitly disclaimed the notion that its decision to deny the suppression motion without a hearing would have been different if it had known about the Crowley testimony.

**Affirmed.**

---

[6] Asked to describe his involvement in the case before the Grand Jury, Agent Crowley stated that he had "reviewed all the reports relative to that arrest," "spoken to the arresting officers," and done a background check on the firearm in question, but that he "was not present that night."