# United States Court of Appeals
## For the First Circuit

No. 14-2120

UNITED STATES OF AMERICA,

Appellee,

v.

MICHAEL GEMMA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Lynch, Circuit Judge,
Souter, Associate Justice,*
and Stahl, Circuit Judge.

Elaine Mittleman, by Appointment of the Court, for appellant,
and Michael Gemma, with whom Charles W. Rankin, Kerry A. Haberlin,
and Rankin & Sultan, were on pro se brief.
Mark T. Quinlivan, Assistant United States Attorney, with
whom Carmen M. Ortiz, United States Attorney, was on brief, for
appellee.

March 30, 2016

_____

* Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**STAHL**, **Circuit Judge**.  In 2012, Defendant-Appellant Michael Gemma was convicted in federal district court of sex trafficking and transporting minors to engage in prostitution.  In this appeal, Gemma makes a plethora of challenges to the district court's judgment.  Finding none of merit, we AFFIRM.

## I. Facts and Background

In September 2011, Massachusetts State Police Trooper Dylan Morris spotted a red Nissan Altima with Pennsylvania tags traveling approximately 95 miles per hour on I-84.  After giving chase, the officer pulled the vehicle over.  Upon approaching the vehicle, the trooper requested identification from the driver, Michael Gemma, who produced a Florida driver's license and a car rental agreement.

Trooper Morris also noticed that the female passenger, "A.L.," was not wearing a seatbelt.  Because of this, Morris asked her for identification in order to cite her for the violation. A.L. informed the trooper that she did not have her I.D., but stated that her name was "Ashley Torres."  Morris asked for her date of birth.  A.L. responded "December 23."  When asked for the year, A.L. responded "1992?," with a rising vocal inflection as though her birth year was a question.

Trooper Morris then asked A.L. to step out of the car so that he could speak with her separately.  A.L. told Morris that she had moved back to Boston from Puerto Rico, gave her mother's

address, and indicated that she had known Gemma for about two years. Trooper Morris returned to the vehicle and asked Gemma about A.L. Gemma responded that he knew only her first name and had known her only for about a month.

Trooper Morris later testified that, at this point, he noticed a faint odor of raw marijuana coming from the interior of the vehicle. Morris asked Gemma to step out of the vehicle, advised him of his Miranda rights, and proceeded to conduct a thorough search of the vehicle, including the trunk. Inside the vehicle, Morris observed lingerie, high heel shoes, a quantity of condoms, and a laptop computer, but no marijuana.

Around this time, Trooper Scott Shea arrived at the scene. Shea ran Gemma's driver's license information and discovered that his right to operate a motor vehicle in Massachusetts had been suspended. Gemma was placed under arrest for driving with a suspended license.

Trooper Morris then resumed questioning A.L. about her identity. A.L. provided her mother's name and address, and said that her mother's phone number was stored in her cell phone, which was still in the vehicle. With A.L.'s permission, Morris retrieved the phone from the car so that A.L. could call her mother. When A.L. turned the phone on, Morris noticed text messages, such as "Are you available for an outcall?" and "I have $200." Trooper Morris recognized these messages as consistent with prostitution.

Morris then spoke on the phone with A.L.'s mother, who provided A.L.'s true name, informed him that she was sixteen years old, and advised him that A.L. had run away from Department of Children and Families ("DCF") custody. A.L.'s mother also informed him that there was a Child-in-Need-of-Services warrant outstanding for her. The troopers took both Gemma and A.L. back to the state police barracks in separate cruisers.

Back at the barracks, Morris interviewed A.L., who revealed that she and Gemma were returning from New York and New Jersey where Gemma had been posting internet advertisements offering sex with her. Trooper Morris later found ads on the internet for sex that showed A.L.'s photograph and contained A.L.'s or Gemma's phone number. During police questioning, Gemma admitted that A.L. was a prostitute, but he denied any involvement.

On May 17, 2012, Gemma was indicted in the United States District Court for the District of Massachusetts for sex trafficking of children or by force, fraud, or coercion, and aiding and abetting, in violation of 18 U.S.C. § 1591(a) and 18 U.S.C. § 2 (Count 1), and transporting minors to engage in prostitution and aiding and abetting, in violation of 18 U.S.C. § 2423(a) and 18 U.S.C. § 2 (Count 2). Before trial, Gemma moved to suppress all physical and testimonial evidence deriving from Trooper Morris' search of the Nissan Altima. The district court partially granted this motion, excluding the contents of the defendant's

- 4 -

laptop and cell phone as well as Trooper Morris' observations. The court, however, declined to suppress A.L.'s cell phone and the contents thereof. The court held that neither party had adequately addressed the circumstances of its seizure and found that the phone had been taken with A.L.'s consent. Because Gemma had "no possessory interest in A.L.'s cell phone," the court held that he lacked standing to challenge its seizure and subsequent search.

At the start of the trial, as part of the preliminary instructions to the jury, the court read the allegations of the indictment. This reading included the charges of aiding and abetting. During the course of the trial, A.L. testified that she had run away from DCF custody and met the defendant through a friend. The defendant had communicated with A.L. by text messages and Facebook. A.L. testified that she told the defendant how old she was, and that her Facebook page listed her correct age. A.L. eventually went to stay with the defendant, who brought her to a hotel in Woburn, Massachusetts and introduced her to a pimp who went by the name "Rich Dollar" and a prostitute, Nicki. According to A.L., the defendant then took "sexual" pictures of her with his cell phone, brought her to another hotel in Shrewsbury, Massachusetts, and instructed Nicki to explain to A.L. that she had been brought there to exchange sex for money. After the defendant posted ads on the internet, A.L. began to receive calls and texts from men who wanted to pay to have sex with her.

- 5 -

A.L. testified that she initially refused these calls, but, after Gemma threatened to hit her if she did not answer them, she thereafter engaged in prostitution, giving the money paid for her services to the defendant. According to A.L., Gemma continued to threaten her, telling her that if she told anyone what she was doing, she would not like the outcome. She also testified that when Gemma brought her to New York and New Jersey, she told him that she did not want to have sex for money anymore and threatened to call the police. In response, Gemma pushed A.L. into a car, causing her to hit her head and suffer a slight concussion.

At the trial's conclusion, the district court provided its final jury instructions. For Count 1, the court explained that there were two theories under which the government could prove its sex trafficking case. The first theory, which the court referred to as "Alternative 1A," was summarized as "sex trafficking by force, fraud or coercion." The second theory, "Alternative 1B," required proving that "the defendant knew or recklessly disregarded the fact that A.L. was under the age of 18 and would be caused by anyone, not necessarily the defendant, to engage in a commercial sex act." This knowledge element could be proven by showing that "[t]he defendant actually knew that A.L. was under the age of 18; that he recklessly disregarded facts that would have given him that knowledge; or, . . . that he had a reasonable opportunity to observe A.L. in the course of events."

The court then instructed the jury on Count 2, explaining that the government must prove the transportation of a minor to engage in prostitution by showing "[1] that the defendant knowingly transported A.L. in interstate or foreign commerce; [2] that he did so with an intent that A.L. would engage in prostitution; and, [3] that A.L. had not attained the age of 18 years." The court instructed that the government needed to prove A.L.'s age, but not the defendant's knowledge of A.L.'s age.

Neither the court's final jury instructions, nor the jury form, mentioned a charge of aiding and abetting. After deliberations, the jury found the defendant guilty on each count and found that the government had proven his guilt under both alternative theories for liability under Count 1.

## II. Analysis

On appeal, Gemma raises a number of challenges to the judgment of the district court.[1] In short, the defendant argues (1) that his indictment was defective based on its failure to allege facts to support the aiding and abetting charges; (2) that the district court abused its discretion in denying his motion to exclude evidence from A.L.'s cell phone; (3) that the district

---

[1] These challenges were raised by the defendant's appointed appellate counsel as well as by the defendant in a pro se capacity with assistance from his trial counsel. For the sake of convenience, we refer to these challenges collectively as the defendant's challenges.

court abused its discretion in denying his motion for production of DCF records that purportedly would show that A.L. had previously offered men sex in exchange for a place to stay; (4) that the district court abused its discretion in admitting evidence that he had prostituted and assaulted another woman named "Faye"; (5) that the government improperly commented on his failure to take the stand in its closing argument; and (6) that the district court erred in instructing the jury regarding the knowledge requirement of § 1591(a).  We address these challenges seriatim.

A.    Defective Indictment

The defendant alleges error from the outset, pointing first to the indictment, which he contends was defective because it failed to provide facts to support the charges of aiding and abetting contained within each count.  Because Gemma failed to timely object to the indictment,[2] we review only for plain error. United States v. Laureano-Pérez, 797 F.3d 45, 60 (1st Cir. 2015). Thus, Gemma must show that "(1) an error occurred; (2) which was clear or obvious; and both (3) affected [his] substantial rights; and (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  Id.

---

[2] Under Fed. R. Crim. P. 12(b)(3)(B), objections to the sufficiency of an indictment "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits."

- 8 -

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." United States v. Serino, 835 F.2d 924, 929 (1st Cir. 1987) (alteration in original) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)). The indictment should "inform the court of the facts alleged" and will generally be sufficient if it "'set[s] forth the offense in the words of the statute itself,' as long as those words set forth all the elements of the offense without any uncertainty or ambiguity." Id. (quoting Hamling, 418 U.S. at 117).

Gemma points out that the indictment, and the court's recitation of the charges to the jury, included allegations of aiding and abetting within each count. Gemma argues that the government's inclusion of the aiding and abetting charges and failure to identify or allege the existence of a principal or codefendant rendered the indictment defective and constitutes reversible error. United States v. Martin, 747 F.2d 1404, 1407 (11th Cir. 1984) (noting that, because "[t]he only person charged with committing [the] offense[s] is [the defendant]," the indictment "can be read . . . as charging an offense not known to the law, i.e., [the defendant's] aiding and abetting himself").

- 9 -

Although Gemma raises a potentially interesting question, we need not reach it because his contention stumbles from the start.

First, Gemma cannot show plain error. The courts of appeals have divided over whether an indictment that alleges aiding and abetting is defective if it does not identify a principal or codefendant. Compare United States v. Somers, 950 F.2d 1279, 1283 (7th Cir. 1991) (finding an indictment charging aiding and abetting was not required to name a principal or codefendant) and United States v. Mehrmanesh, 689 F.2d 822, 835 (9th Cir. 1982) (finding aiding and abetting indictment not fatally defective where it failed to identify a principal), with United States v. Garcia-Paulin, 627 F.3d 127, 133-34 (5th Cir. 2010) (finding indictment had insufficient factual basis where the government identified no co-conspirators or principal whom the defendant aided and abetted) and Martin, 747 F.2d at 1407-08 (finding indictment insufficient because no principal or codefendant was named and one cannot aid or abet himself). Where this Court has not addressed an issue, and the law is unclear, the defendant cannot show plain error. United States v. Diaz, 285 F.3d 92, 96 (1st Cir. 2002) ("If a circuit conflict exists on a question, and the law is unsettled in the circuit in which the appeal was taken, any error cannot be plain or obvious.").

Second, even if this Court were to adopt Gemma's view of the law, his appeal would still fail. As the Eleventh Circuit

has indicated, a denial of a motion to dismiss an indictment "is not necessarily reversible error; defects in an indictment can be harmless or can be cured by instructions to the jury."  Martin, 747 F.2d at 1407.  Here, the court omitted any instructions on aiding and abetting in its final charge and the verdict form did not refer to aiding and abetting with respect to either count. Gemma, therefore, cannot show that his substantial rights were affected or that any possible error seriously impaired the fairness, integrity, or public reputation of judicial proceedings. Because Gemma cannot show plain error, and any error would be harmless, his argument fails.

B.    Motion to Exclude/Suppress

Before trial, Gemma moved to suppress the physical and testimonial evidence derived from the search of his vehicle.  The district court granted the motion in part, but declined to suppress evidence from A.L.'s cell phone.  The defendant later filed a motion to exclude evidence derived from A.L.'s cell phone, reiterating, inter alia, that the evidence was seized in violation of the Fourth Amendment.  The court summarily denied this claim.

Gemma contends that the district court erred because he had a reasonable expectation of privacy in the vehicle, A.L. lacked authority to consent to the seizure of her phone from the vehicle, and the phone should be suppressed as "fruits" of Trooper Morris' initial, unlawful search.  Although the parties battle at length

over the proper standard of review,[3] "we would find no error in the district court's decision even if our review were de novo." United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009).

The evidence supports the denial of Gemma's motion to suppress. United States v. Boskic, 545 F.3d 69, 77 (1st Cir. 2008) ("If any reasonable view of the evidence supports the denial of a motion to suppress, we will affirm the denial."). A.L.'s phone was not seized during the initial search, which the court found unlawful. Instead, at the time A.L.'s phone was retrieved so that she could call her mother, Morris found himself on the side of a major interstate highway facing a now-unoccupied vehicle, an

---

[3] The government argues that Gemma's motion to exclude on the basis of the Fourth Amendment is better understood as a motion to reconsider the court's prior denial of his motion to suppress. In his motion to exclude, Gemma specifically "request[ed] leave . . . to raise this constitutional issue late" because "counsel was not fully aware of the significance of . . . A.L.'s cell phone . . . at the time of the litigation of [the] motion to suppress." A motion for reconsideration is not to be used as "a vehicle for a party to undo its own procedural failures." United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009) (quoting Iverson v. City of Boston, 452 F.3d 94, 104 (1st Cir. 2006)). Instead, such motions are appropriate only "if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." Id. Because the defendant's motion did little more than introduce an argument that was readily available at the time of the motion to suppress, the government contends that we should review the district court's summary dismissal based on a waived argument for abuse of discretion. Id. In response, Gemma argues that an error of law is, by definition, an abuse of discretion, United States v. Carpenter, 781 F.3d 599, 608 n.8 (1st Cir. 2015), and that we should therefore review the merits of his Fourth Amendment argument de novo.

arrested driver, and an unidentified and seemingly underage girl in a potentially unsafe situation.

In these circumstances, the government is right to rely on the Fourth Amendment's general reasonableness command. United States v. Rodriguez-Morales, 929 F.2d 780, 783 (1st Cir. 1991). The Supreme Court recognized several decades ago that "[l]ocal police officers, unlike federal officers, frequently . . . engage in what, for want of a better term, may be described as community caretaking functions." Cady v. Dombrowski, 413 U.S. 433, 441 (1973). Apart from investigating crime, police are "expected to aid those in distress, combat actual hazards, prevent potential hazards from materializing and provide an infinite variety of services to preserve and protect public safety." Rodriguez-Morales, 929 F.2d at 784-85.

Here, Morris encountered the unfolding of "unexpected circumstances present[ing] [a] transient hazard" that he had to "deal[] with on the spot." Id. at 787. Viewed objectively, Morris had "solid, noninvestigatory reasons" for retrieving A.L.'s cell phone from the vehicle so that she could call her mother. Id. A.L. did not have identification, could not make use of the defendant's vehicle, and was now effectively stranded. Gemma's and A.L.'s conflicting answers suggested that A.L. might be in a potentially compromised position and require assistance "separate and apart" from an investigation into any crime. Id. at 784.

Finally, A.L.'s hesitation with respect to her age and her response that she lived with her mother all suggested that she was a minor who should be returned to the care of a confirmed legal custodian, whoever and wherever that person may be. We will not find the officer's extempore actions unreasonable in circumstances such as existed here. See id. at 786 ("There is no requirement that . . . officers must select the least intrusive way of fulfilling their community caretaking responsibilities.").

Because Morris retrieved the phone and witnessed the text messages suggestive of sex trafficking activity in the course of his community caretaking duties, the evidence was properly admissible. Id. at 785 ("[E]vidence which comes to light during the due execution of the caretaking function is ordinarily admissible at trial."). Although Morris' original search of the car may have been unlawful, Gemma introduced no evidence or testimony suggesting that Morris' later retrieval of A.L.'s phone was a pretext for conducting an additional search of the vehicle or of the phone itself. Id. at 787 (holding that, so long as an officer's actions are "not a mere subterfuge for investigation, the coexistence of investigatory and caretaking motives will not invalidate the [search or] seizure").

On this record, Gemma's constitutional challenge, whether couched as a motion to suppress, to exclude, or to reconsider, would fail any applicable standard of review.

C.    Production of Records

Gemma next argues that the district court erred by denying his motion to compel the production of classified DCF records.  The Court reviews the denial of a defendant's discovery motion for abuse of discretion.  United States v. Cartagena, 593 F.3d 104, 112 (1st Cir. 2010).[4]

Prior to trial, Gemma requested the production of records in the possession of DCF.  A magistrate judge denied the motion, finding that Gemma had failed to show that the requested records were relevant or to describe the documents with any specificity.  In addition, the magistrate judge noted that, to the extent the DCF records contained information regarding prior instances of A.L. engaging in prostitution, such information might not be admissible because Federal Rule of Evidence 412(a)(1) "prohibits the admission of 'evidence offered to prove that a victim engaged in other sexual behavior' in a case involving allegations of sexual misconduct."

Gemma thereafter filed a renewed motion for production in which he argued that the exclusion of evidence that A.L. had previously engaged in prostitution before meeting him would

_____

[4] Because neither party requests de novo review, the question of whether this standard would apply is waived.  Cf. United States v. Rivera, 799 F.3d 180, 184 (2d Cir. 2015) ("[W]e review interpretations of law de novo, including whether an evidentiary ruling violates a defendant's constitutional rights.").

- 15 -

violate his Fifth and Sixth Amendment rights to confront her by cross-examination and to have a meaningful opportunity to present a complete defense. After reviewing a set of records submitted ex parte and under seal, the court ordered the government to disclose an email from a social worker that discussed an incident involving A.L. The email stated that another young woman who had been on the run with A.L. told this social worker that A.L. had been wandering the streets offering to sleep with men in exchange for a place to stay. At trial, A.L. denied these statements and testified that she did not remember the names of the other two young women she was with at the time. The defendant then moved for disclosure of records identifying these two young women. The court denied the motion, calling it "speculative" that additional evidence would become available and noting that the defense already had an opportunity to cross-examine A.L. about the issue.

Under Federal Rule of Evidence 412(a), "evidence offered to prove that a victim engaged in other sexual behavior" is generally prohibited in a "criminal proceeding involving alleged sexual misconduct." This rule "aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details." Fed. R. Evid. 412 advisory committee's note to 1994 amendment. Rule 412(b)(1)(C) provides an

exception for "evidence whose exclusion would violate the defendant's constitutional rights."

"The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him." Davis v. Alaska, 415 U.S. 308, 315 (1974). Supreme Court "cases construing the (confrontation) clause hold that a primary interest secured by it is the right of cross-examination." Douglas v. Alabama, 380 U.S. 415, 418 (1965). Additionally, the Fifth Amendment guarantees the right to a fair trial, and courts have "long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense." California v. Trombetta, 467 U.S. 479, 485 (1984). In order to protect this right, "[a] defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." Brady v. Maryland, 373 U.S. 83, 87 (1963). "Less clear . . . is the extent to which the Due Process Clause imposes on the government the additional responsibility of guaranteeing criminal defendants access to exculpatory evidence beyond the government's possession." Trombetta, 467 U.S. at 486.

On appeal, Gemma challenges the court's denial of his request for the production of additional evidence pertaining to A.L.'s alleged prior prostitution. We can find no error. First,

the evidence sought is either entirely irrelevant or of such slight probative value in comparison to its prejudicial effect that a decision to exclude it would not violate Gemma's constitutional rights. A number of other circuits have held that evidence of prior prostitution is irrelevant to a charge under § 1591(a), and thus is properly barred. See United States v. Rivera, 799 F.3d 180, 185 (2d Cir. 2015); United States v. Roy, 781 F.3d 416, 420 (8th Cir. 2015); United States v. Cephus, 684 F.3d 703, 708 (7th Cir. 2012); United States v. Valenzuela, 495 F. App'x 817, 819-20 (9th Cir. 2012) (unpublished).

Gemma contends that he did not force A.L. into prostitution and that evidence of her prior sexual behavior would shore up his cause. Not so. "The victim's participation in prostitution either before or after the time period in the indictment has no relevance to whether [Gemma] beat her, threatened her, and took the money she made from prostitution in order to cause her to engage in commercial sex." Roy, 781 F.3d at 420.

Nor is Gemma's contention significantly strengthened by shifting away from a coercion basis for criminal liability.

> Because the victim[] [was a] minor[] and could not legally consent, the government did not need to prove the elements of fraud, force, or coercion, which are required for adult victims. Instead, the government was only required to prove [Gemma] knowingly recruited, enticed, harbored, transported, provided, or obtained a minor, knowing the minor would be caused to engage in commercial sex acts.

- 18 -

United States v. Elbert, 561 F.3d 771, 777 (8th Cir. 2009) (citations omitted).

Moreover, even if we were to accept Gemma's contention that the evidence had some probative value with respect to his relationship with A.L., the balance of probative and prejudicial effect is such that the court's decision could hardly be said to have violated his constitutional rights. See id. In this case, there was no dispute that A.L. engaged in prostitution; the only question was whether Gemma acted as her pimp. Rather than evincing Gemma's intent at the time of the offense, introducing A.L.'s alleged acts of prior prostitution would have only strengthened Gemma's hand by reinforcing a narrative that A.L. acted consistent with prior sexual behavior. This evidence and line of reasoning falls squarely within a class deemed so extremely prejudicial as to warrant special treatment under the Federal Rules of Evidence.

Second, this is not a case wherein a discrete piece of identified evidence was deemed inadmissible by the district court; rather, this is a case where the defendant's request for additional discovery was denied. As the district court noted, this rendered the defendant's request more speculative than specific and weakened an already attenuated basis for his motion.

Finally, the requested evidence was not only speculative and likely inadmissible, but bordered on cumulative. As the court

emphasized, the defense already had an opportunity to cross-examine A.L. about her alleged acts of prior prostitution. This is arguably more than Gemma was entitled to in the first place.

In sum, Gemma has a right to cross-examine the witnesses against him and a right to present a complete defense, but these do not create an auxiliary right to have all discovery and evidentiary rulings turn in his favor. If Gemma was deprived of anything, it was the opportunity to seek unspecified and presumably inadmissible evidence to engage in additional cross examination on a topic of questionable relevance to begin with.[5]

## D.  Evidence Regarding Faye

In what might be viewed as the inverse of the challenge above, Gemma also argues that the court erred in admitting evidence that he had previously prostituted and physically abused a woman named Faye. Gemma points to Federal Rule of Evidence 404(b), which provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

---

[5] Gemma alternatively asserts that, at a minimum, the district court should have reviewed the additional records in camera. But Gemma did not make that request before the district court and, for the same reasons articulated above, cannot show plain error on appeal.

This Court reviews a ruling that evidence was admitted consistent with Federal Rules of Evidence 404(b) and 403 for abuse of discretion. United States v. Moon, 802 F.3d 135, 144 (1st Cir. 2015). "Only rarely--and in extraordinarily compelling circumstances--will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." United States v. Baynard, 642 F.3d 59, 63 (1st Cir. 2011).

Under Federal Rule of Evidence 404(b), evidence of previous crimes or acts may be admitted for the purpose of "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." In deciding whether to admit such evidence, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

A critical factual dispute in this case was whether the relationship between Gemma and A.L. was that of a pimp and prostitute. Therefore, evidence that Gemma was in the prostitution business and exercised control over prostitutes other than A.L., sometimes by means of physical violence, was highly probative of Gemma's intent. See United States v. Jarrett, 956 F.2d 864, 866-67 (8th Cir. 1992) (holding testimony by witnesses that defendant

approached them seeking to secure their services as prostitutes in his employ was admissible under Rule 404(b) to show knowledge and intent); United States v. Love, 449 F. App'x 338, 339-40 (5th Cir. 2011) (unpublished) (holding evidence that defendant prostituted another female a year prior to crime admissible because defendant contested his intent to prostitute the victim).

At trial, the district court permitted A.L. to testify that she knew Faye, that Faye was a girl who used to prostitute for Gemma, and that Gemma had an argument with Faye about prostitution and A.L. saw Gemma slap her. Unlike A.L.'s alleged prior prostitution activities, which shed relatively little light on the disputed issue of Gemma's intent, Gemma's prior acts as a pimp were highly probative of his intent in the instant case.

Although Gemma contends that the introduction of this evidence carried an unacceptable risk that the jury would find him guilty "because he was a bad person who deserved to be punished," we are hardly convinced that the court abused its discretion in admitting the evidence given its probative value in answering the central question of this case. To be sure, the similarity of "other acts" evidence "simultaneously establishes its relevance and heightens the possibility that the jury will draw an unfair inference of propensity." United States v. Appolon, 715 F.3d 362, 374 (1st Cir. 2013). However, "given the facts of this case and the notable similarity between the uncharged conduct and the basis

of [the defendant's] indictment," we find "that the district court properly evaluated the 'risk of an improper criminal propensity inference . . . in light of the totality of the circumstances.'" Id. (second alteration in original) (quoting United States v. Varoudakis, 223 F.3d 113, 123 (1st Cir. 2000)).

E.    Prosecutorial Misconduct

Gemma's penultimate challenge is to certain statements by the government in its closing argument that he contends constituted prosecutorial misconduct.  During the government's closing, the prosecutor repeatedly pointed to the defendant's admission of certain facts, emphasizing that these facts were undisputed.  The defendant objected, arguing that these references improperly shifted the burden to the defendant, and requested a curative instruction.  The district court found that an instruction was unnecessary given that the jury would be instructed on the government's burden of proof prior to deliberations.

The defendant now argues that these remarks constituted improper comments on his failure to take the stand, in violation of his Fifth Amendment rights.  Where a defendant contemporaneously objects on different grounds than those raised on appeal, the Court reviews the issue as an unpreserved objection for plain error. United States v. Bey, 188 F.3d 1, 10 (1st Cir. 1999).

The Fifth Amendment prohibits the government from commenting on a defendant's exercise of his right to remain silent.

United States v. Robinson, 485 U.S. 25, 30 (1988); United States v. Zarauskas, ___ F.3d ___, 2016 WL 524250, at *4 (1st Cir. Feb. 10, 2016). References to evidence as undisputed can constitute a violation when the defendant is the only person who could logically dispute that evidence. Bey, 188 F.3d at 9. In deciding whether such comments violate the defendant's Fifth Amendment rights, we consider "whether, in the circumstances of the particular case, the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." United States v. Glantz, 810 F.2d 316, 322 (1st Cir. 1987) (quoting United States v. Monaghan, 741 F.2d 1434, 1437 (D.C. Cir. 1984) (internal quotation marks omitted)).

Here, the government stated that certain facts in the case were not in dispute because Gemma had admitted to them, particularly with respect to Count 2 of the indictment.

> You've heard a lot of disputed facts about [A.L.] and her history and her time with the defendant. But before we get into what is disputed I want to briefly go over with [you] what's not disputed. [A.L.] was prostituted both in Massachusetts and in New Jersey. [A.L.] was 16 years old at the time. The defendant met [A.L.] through a girl, M., who was 12 years old. Between September 27th and September 30th the defendant drove [A.L.] from Massachusetts to New York and New Jersey, and back to Massachusetts for purposes of prostitution. These facts are not in dispute because the defendant admitted to them. These

> facts are all you need to find the defendant
> guilty of Count 2. . . .
>
> You have the rental car documents.  You have
> the toll transponder documents.  You have the
> documents that show that this defendant rented
> a car on September 27th, and the documents
> that show that he drove from Massachusetts to
> New York and New Jersey and back.  <u>And more
> importantly, you have his admission that he
> drove [A.L.] and other girls to New York and
> New Jersey, and you have his admission that he
> knew [A.L.] and girls were engaged in
> prostitution.</u>  And you know that [A.L.] was 16
> at the time.  This is all you need to convict
> him on Count 2. . . .
>
> There's also no dispute that the email account
> that posted these ads was the defendant's.  <u>He
> admitted them.</u>  It's also not disputed that
> when she was posted in these ads, she was in
> hotel rooms rented by Michael Gemma.  You have
> before you all of the documents that you need
> to prove that the defendant was indeed
> involved in prostituting [A.L.] (emphases
> added).

Viewed in the context of the case, we can find no error, let alone

plain error, in the court's decision to allow these comments.  The

comments merely highlighted the defendant's own admissions, and

the government tied the evidence that it said was undisputed to

admissions that Gemma made.  No reasonable jury would have

understood these remarks as a comment on the defendant's failure

to testify.  Taken together, "[t]he comment itself, the court's

response, and the defendant's failure to object or to move for a

dismissal or new trial indicate that the prosecutor's remark did

not refer to the defendant's failure to testify." United States v. Lavoie, 721 F.2d 407, 408 (1st Cir. 1984).

Finally, any lingering trace of doubt would have been put to rest by the district court, which instructed the jury at the end of the trial that a defendant in a criminal case has a constitutional right not to testify, and that the jury "may not under any circumstances draw any inference or presumption against the defendant from his decision not to testify." See United States v. Smith, 145 F.3d 458, 462 (1st Cir. 1998) ("We 'must presume that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case, and that they follow those instructions.'" (quoting United States v. Houlihan, 92 F.3d 1271, 1287 (1st Cir. 1996))). For these reasons, Gemma's prosecutorial misconduct challenge fails.

F. Instruction Regarding § 1591(a)'s Knowledge Requirement

Lastly, Gemma floats an argument that there is "uncertainty" regarding the knowledge element of § 1591(a). Because the defendant did not object to the jury instruction after the charge was given but before deliberations began, we review for plain error. See United States v. Santana-Rosa, 132 F.3d 860, 863 n.1 (1st Cir. 1998); see also Fed. R. Crim. P. 30(d).

The text of § 1591(a) proscribes two forms of sex trafficking: (1) sex trafficking involving a commercial sex act

induced by means of force, threats of force, fraud, or coercion, or a combination thereof; and (2) child sex trafficking in which the person induced to perform the commercial sex act is under the age of 18.  18 U.S.C. § 1591(a).  The <u>mens rea</u> elements for the two forms of sex trafficking are different.  Under the first form, a defendant must act knowingly, or in reckless disregard of the fact, that a commercial sex act was induced by means of force, threats of force, fraud, coercion, or any combination thereof. Under the second form, a defendant must act knowingly, or in reckless disregard of the fact, that the person induced to perform the commercial sex act was not 18 years old.  <u>Id.</u>  With respect to this second form, Congress provided:

> In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited, the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years.

<u>Id.</u> § 1591(c).

The government charged Gemma with violating both forms of § 1591(a), the court instructed the jury on both theories of liability, and the court advised the jury that the government could prove the knowledge element under the second theory by showing (1) that the defendant actually knew A.L. was under 18; (2) that he recklessly disregarded facts that would have given him that

knowledge; or (3) that he had a reasonable opportunity to observe A.L. in the course of events.

The defendant contends that this instruction was erroneous in light of our decision in United States v. Encarnación-Ruiz, 787 F.3d 581 (1st Cir. 2015). There, we examined whether an aider and abetter of the production of child pornography under 18 U.S.C. § 2251(a), a strict liability crime for a principal, could be held liable without knowing that the victim was a minor. We held that he could not. Id. at 591.

Simply put, our holding in Encarnación-Ruiz has no import here. Not only are we examining an entirely separate statute, § 1591(a), but Gemma was convicted as a principal, not an aider and abetter. Even more importantly, Gemma was convicted under both theories of § 1591(a) liability, meaning that any error pertaining to his knowledge of A.L.'s age would have been utterly harmless. Once again, the defendant's basis for appeal is distinctly unpersuasive and falls far short of that necessary to survive the rigors of plain-error review.

### III. Conclusion

The judgment of the district court is AFFIRMED.